UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER L. PLESHA, | ) | |
| on behalf of herself and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-01459-CMS |
| | ) | |
| ASCENSION HEALTH ALLIANCE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ascension Health Alliance's

Motion to Dismiss Plaintiff's Complaint (Doc. 26). For the reasons set forth below,

the Motion to Dismiss is **GRANTED**.

## PLAINTIFF'S COMPLAINT

Plaintiff Jennifer Plesha was an employee of Defendant throughout 2024.

(Doc. 1 at 3).  During her time employed by Defendant, Plaintiff participated in the

Ascension Welfare Benefits Plan. (Doc. 1 at 3). The Plan, an employee benefit plan

for Employee Retirement Income Security Act (ERISA) purposes, has over

110,000 active members. (Doc. 1 at 3).  Defendant "sponsored, maintained, and

managed" the Plan and acted as the Plan administrator throughout Plaintiff's

employment. (Doc. 1 at 3).

1

Under the Plan, any member who used tobacco products in the past three years was required to identify himself as a tobacco user during enrollment for the next year. (Doc. 1 at 5). Tobacco users were surcharged an additional $750 per year, or about $30 per paycheck. (Doc. 1 at 5). But Defendant also offered tobacco users a chance to avoid this surcharge in the form of a wellness program – or, in ERISA terms, a "reasonable alternative standard" "for obtaining the full reward." (Doc. 1 at 6). If the tobacco user "complete[d] a minimum of four telephone coaching sessions with a certified tobacco cessation coach within six months of starting the program," then the Plan would remove the surcharge for the remainder of the year. (Doc. 1 at 7).

Plaintiff, a self-identified tobacco user, paid the tobacco surcharge during her employment with Defendant. (Doc. 1 at 3). Plaintiff's Count I alleges this tobacco surcharge violates ERISA – namely, 29 U.S.C. § 1182(b) – because some members may not receive the "full reward" for participating in the wellness program. (Doc. 1 at 13). According to Plaintiff, ERISA and accompanying regulations require that all individuals who complete Defendant's wellness program receive a refund for the entire year in which they identified as tobacco users. (Doc. 1 at 13). So, if a member has previously paid the tobacco surcharge but then completes the wellness program, Plaintiff claims, Defendant is required to reimburse the member for any

2

tobacco surcharge paid before completing the wellness program in that calendar year. (Doc. 1 at 13-14).

Plaintiff's Complaint also alleges two other ERISA violations stemming from the wellness program. (Doc 1). Count II alleges that Defendant "did not give statutorily required notice of a complaint reasonable alternative standard" because "neither the Plan document nor the summary plan description for the Plan during the application limitations period detailed a reasonable alternative standard that would allow all participants to avoid paying the tobacco surcharge for the entire plan year, in violation of the applicable regulations." (Doc. 1 at 15).

And Count III claims that Defendant breached its fiduciary duty to the Plan in assessing the allegedly discriminatory surcharge. (Doc. 1 at 16). Plaintiff alleges that Defendant breached its duty of loyalty to the plan through "retaining the additional money received from" the tobacco surcharge for Defendant's own benefit. (Doc. 1 at 16).[1]

---

[1] In her Complaint, Plaintiff also moves to certify a class under Fed. R. Civ. P. 23.01(b)(1), 23.01(b)(2), and 23.01(b)(3) consisting of "[a]ll individuals residing in the U.S. who, during the applicable statute of limitations, paid a tobacco surcharge that was not fully reimbursed, in connection with a health or welfare plan offered by Defendant." (Doc. 1 at 10). Because all of Plaintiff's claims will be dismissed, Plaintiff's request for an order certifying the proposed class is denied as moot. *See Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008) ("In a class action, dismissal on mootness grounds normally is required when the named plaintiffs' claims become moot prior to a decision on class certification.") (citing *Hechenberger v. W. Elec. Co.*, 742 F.2d 453, 455 (8th Cir. 1984); *Inmates of Lincoln Intake and Det. Facility v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir. 1983)).

In its Motion to Dismiss Plaintiff's Complaint (Doc. 26), Defendant raises several arguments in favor of dismissing each of Plaintiff's three counts. Those arguments will be addressed *seriatim* under each applicable count.

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (*en banc*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *K.T. v. Culver-Stockton College*, 765 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012)). The Court assumes all the complaint's factual allegations are true and construes all reasonable inferences in the plaintiff's favor. *Unesko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (citing *Retro Television, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012)). The Court may

also consider documents attached to the complaint and materials necessarily

embraced by the pleadings. *Id.* at 512. "Statutory interpretation is a question of

law", *Roubideaux v. North Dakota Dept. of Corrections and Rehab.*, 570 F.3d 966,

972 (8th Cir. 2009) (quoting *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524,

537 (8th Cir. 2006)), that may be resolved on a motion to dismiss. *See Ark. Times

LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trs.*, 37 F.4th 1386, 1392 (8th Cir. 2022)

(*en banc*).

### Statutory Framework For Counts I and II

As part of ERISA, 29 U.S.C. § 1182, which is titled "Prohibiting

discrimination against individual participants and beneficiaries based on health

status," prohibits a group health plan from requiring any individual to pay a health

plan premium greater than that of a similarly situated individual enrolled in the

plan based on, among other things, any medical condition or health status-related

factor. 29 U.S.C. § 1182(a). But 28 U.S.C. § 1182(b)(2)(B) states that this

provision shall not be construed "to prevent a group health plan… from

establishing premium discounts or rebates or modifying otherwise applicable

copayments or deductibles in return for adherence to programs of health promotion

and disease prevention." 29 U.S.C. § 1182(b)(2)(B).

In 2010, the Patient Protection and Affordable Care Act ("ACA") amended

ERISA to incorporate Section 2705 of the Public Health Safety Act ("PHSA")

regarding, among other things, wellness programs. See 29 U.S.C. § 1185d(a)(1)

("The provisions of part A of title XXVII of the Public Health Service Act (as

amended by the [ACA]) shall apply to group health plans."). That section of the

PHSA provides that "[i]f any of the conditions for obtaining a premium discount,

rebate, or reward under a wellness program ... is based on an individual satisfying a

standard that is related to a health status factor, the wellness program shall not

violate this section if the following requirements are complied with[.]" 42 U.S.C. §

300gg-4(j)(3). Those requirements include that: (1) "the full reward under the

wellness program shall be made available to all similarly situated individuals," and

(2) the plan must "disclose in all plan materials describing the terms of the

wellness program the availability of a reasonable alternative standard." 42 U.S.C. §

300gg-4(j)(3)(D), (E). A plan must also "give individuals eligible for the program

the opportunity to qualify for the reward under the program at least once each

year." 42 U.S.C. § 300gg-4(j)(3)(C).

42 U.S.C. § 300gg-4(j)(D)(i) provides further instruction for how to construe

the first requirement. It states that the "full reward" requirement is not met "unless

the wellness program allows":

> (I) for a reasonable alternative standard (or waiver of the otherwise
> applicable standard) for obtaining the reward for any individual for
> whom, for that period, it is unreasonably difficult due to a medical
> condition to satisfy the otherwise applicable standard; or
> (II) for a reasonable alternative standard (or waiver of the otherwise
> applicable standard) for obtaining the reward for any individual for

6

whom, for that period, it is medically inadvisable to attempt to satisfy the otherwise applicable standard.

42 U.S.C. § 300gg-4(j)(D)(i).

### Regulatory Framework for Counts I and II

In 2013, the Department of Labor (DOL) promulgated regulations for the PHSA. Like the PHSA, the regulations state, "[t]he full reward under the activity-only wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Unlike the PSHA, though, the regulations define "reward" to mean both "obtaining a reward" and "avoiding a penalty". 29 C.F.R. § 2590.702(f)(1)(i). Also, the regulations regarding notice added more requirements for plan administrators: in addition to the basic statutory requirements that the plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program" and "the availability of a reasonable alternative standard," the regulations direct administrators to "include[e] contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v).

DOL also included illustrative examples of a regulatory-compliant tobacco cessation "reasonable alternative" in a preamble to the 2013 regulations. "For plans with an initial outcome-based standard that an individual not use tobacco, a reasonable alternative standard in Year 1 may be to try an educational seminar. As

clarified in an example in the final regulations, an individual who attends the

seminar is then entitled to the reward, regardless of whether the individual quits

smoking." 78 Fed. Reg. 33158-01, at 33164. The preamble also provided DOL's

interpretation of the statutory and regulatory phrase, "full reward":

> [I]n order to satisfy the requirement to provide a reasonable alternative standard, the same, full reward must be available under a health-contingent wellness program (whether an activity-only or outcome-based wellness program) to individuals who qualify by satisfying a reasonable alternative standard as is provided to individuals who qualify by satisfying the program's otherwise applicable standard. Accordingly, while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the individual receives the full amount of the reward. In some circumstances, an individual may not satisfy the reasonable alternative standard until the end of the year. In such circumstances, the plan or issuer may provide a retroactive payment of the reward for that year within a reasonable time after the end of the year, but may not provide pro rata payments over the following year (a year after the year to which the reward corresponds).

78 Fed.Reg. 33158-01, at 33163.

**Count I is Dismissed With Prejudice.**

Plaintiff's Count I hinges on the meaning of the statutory term "full reward" in 42 U.S.C. § 300gg-4(j)(3)(D). According to her, that provision requires that all individuals who complete a wellness program receive a refund for the entire year for which they identified as tobacco users – regardless of when the wellness program was completed. (Doc. 1 at 13). For their part, Defendant argues that ERISA requires a plan administrator to remove a tobacco surcharge only prospectively. (Doc. 26-1 at 17).

As always, statutory interpretation of a word or phrase begins with the statutory text. *BP American Production Co. v. Burton*, 549 U.S. 84, 91 (2006) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, N. A., 511 U.S. 164, 173 (1994). "Statutory definitions control the meaning of statutory words ... in the usual case." *Burgess v. United States*, 553 U.S. 124, 129-30 (2008) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)). Undefined words are generally given their ordinary meaning as found in the dictionary. *Riegelsberger v. Air Evac EMS, Inc.*, 970 F.3d 1061, 1064 (8th Cir. 2020) (citing *Thompson Truck & Trailer, Inc. v. United States*, 901 F.3d 951, 953 (8th Cir. 2018)).

The word "full" is defined as "containing all that possibly can be placed or put within." *Full*, *Webster's Third New International Dictionary* (2002). According

to the statutory definition, "reward" refers to the monetary incentive for completing the wellness program. 42 U.S.C. § 300gg-4(j)(3)(A). The "reward may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), the absence of a surcharge, or the value of a benefit that would otherwise not be provided under the plan." *Id.*

Here, Defendant elected to create a reward program with the "absence of a surcharge" option. Nothing in the text of the phrase "absence of a surcharge" suggests that that particular reward must be given retroactively, and Congress knew how to mandate retroactive reimbursement when it enacted the PHSA. The "reward may be in the form of a discount or rebate of a premium or contribution." A "rebate" is a "*retroactive* abatement, credit, discount, or refund …" *Rebate*, Webster's Third New International Dictionary (3d ed. 1961) (emphasis added). If Congress intended for all 42 U.S.C. § 300gg-4(j)(3)(A) rewards to operate like a rebate, as Plaintiff claims, then Congress would have simply mandated that the reward must be in the form of a rebate only.[2] But Congress chose to give plan administrators flexibility in crafting a wellness program.

---

[2] Plaintiff's reading of "full reward" renders all other types of rewards, besides rebates, in 42 U.S.C. § 300gg-4(j)(3)(A) superfluous. This violates the "cardinal principle of statutory construction" that a court must "give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (citations and quotations omitted).

10

Accepting Plaintiff's reading of "full reward" would also frustrate Congress' stated purpose in creating the wellness program scheme. A compliant "wellness program shall be reasonably designed to promote health or prevent disease" with a "reasonable chance of improving the health of, or preventing disease in, participating individuals[.]" 42 U.S.C. § 300gg-4(j)(3)(B). That a tobacco cessation program, like the one at issue here, would incentivize a member to complete the program earlier rather than later makes perfect sense. A reasonable way to incentivize members to complete a tobacco cessation program earlier in the plan year is to allow members to receive a greater monetary reward for completing the program sooner.

This reading of the statute also is consistent with the requirement that a member must receive the "full" reward. "Whether an individual who receives only a prospective 'absence of a surcharge' halfway through the plan year obtains the same reward as an individual who did not have to pay the surcharge from the beginning of the year is a matter of perspective: while on the one hand the first individual received a different reward because that individual had to pay the tobacco surcharge up until the time they completed the program, on the other hand both receive the same reward of not being prospectively charged a tobacco surcharge." *Williams v. Bally's Mgmt. Grp., LLC*, --- F.Supp.3d ----, 2025 WL

3078747 at * 11 (D. R. I. Nov. 4, 2025), *appeal docketed*, No. 25-2159 (1st Cir. Dec. 10, 2025).

In short, 42 U.S.C. § 300gg-4(j)(3)(B) does not impose a retroactive reimbursement requirement for tobacco cessation surcharges.

Despite the statutory language, Plaintiff asks the Court to defer to the regulatory definition of "full reward" found in the 2013 preamble pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997).[3] *Auer* "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012).

The first problem with this argument is that "the possibility of [*Auer*] deference can arise only if a regulation is genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019). "[B]efore concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* at 575 (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, n. 9 (1984), *overruled by Loper Bright Enterprises v. Raimondo*,

---

[3] *Auer* is on shaky footing after the Supreme Court overruled its statutory counterpart, *Chevron* deference, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *See Decker v. Northwest Environmental Defense Center*, 568 U.S. 597, 617 (2013) (Scalia, J., concurring in part) ("In practice, *Auer* deference is *Chevron* deference applied to regulations rather than statutes."). Even if a Supreme Court decision rests on "increasingly wobbly, moth-eaten foundations," "it is [the Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1363 (7th Cir. 1996)).

603 U.S. 369 (2024)); *see also Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting) ("Deference is appropriate where the relevant language, carefully considered, can yield more than one reasonable interpretation, not where discerning the only possible interpretation requires a taxing inquiry.").

As already explained, the meaning of the statutory term "full reward" in this scenario is "discernible" with the use of a court's "full interpretive toolkit." *Loper Bright*, 603 U.S. at 409. Considering that "full reward" is used identically in both the statutory and regulatory text, that phrase means the same thing in both places. *Compare* 42 U.S.C. § 300gg-4(j)(3)(D) ("The full reward under the wellness program shall be made available to all similarly situated individuals[.]") with 29 C.F.R. § 2590.702(f)(4)(iv) ("The full reward under the outcome-based wellness program must be available to all similarly situated individuals.")

Similarly, the "anti-parroting doctrine" also weighs against deferring to DOL's interpretation of "full reward." The "existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute." *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). "An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." *Id.* Particularly after *Chevron*'s demise, deferring to DOL's interpretation of a regulation when blind

13

deference to DOL's interpretation of a near-identical regulation is not allowed would "be an improper end run around *Loper Bright*." *Buescher v. N. Am. Lighting Inc.*, 791 F.Supp.3d 873, 905-06 (C.D. Ill. 2025).

Beyond the regulations and 2013 preamble to the regulations, Plaintiff also argues that DOL has adopted her preferred reading of "full reward" in litigation. *See Sec. of Labor v. Macy's, Inc.*, No. 17-CV-541, Dkt. 41 (S.D. Ohio Oct. 31, 2018); *Macy's, Inc.*, No. 17-CV-541, Dkt. 77 (S.D. Ohio Sep. 11, 2024). Both before and after *Auer*, the Supreme Court has declined to defer "to what appears to be nothing more than an agency's convenient litigating position." *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 213 (1988) (pre-*Auer*); *Christopher*, 567 U.S. at 155 (applying the same logic post-*Auer*). DOL's litigating position in a single case cannot change the relevant statutory text. Even if DOL has consistently held Plaintiff's view of 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv), "an agency's consistently wrong interpretation cannot rewrite the statute's text to change its meaning." *Missouri v. Trump*, 128 F.4th 979, 994 (8th Cir. 2025) (citing *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 241 (5th Cir. 2024), *cert. granted*, 145 S.Ct. 1039 (2025), *and cert. dismissed*, 146 S.Ct. 59 (2025)).

In the end, the relevant inquiry is still what the statute means – not what the accompanying regulation means. Because 42 U.S.C. § 300gg-4(j)(3)(D) does not

14

require a plan administrator to retroactively reimburse a member for a tobacco use surcharge, Defendant's Plan does not violate ERISA. Count I is DISMISSED with PREJUDICE.

## Count II is Dismissed with Prejudice.

*Plaintiff Does Not Have Standing to Proceed with Count II.*

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A*, 590 U.S. 538, 547 (2020). To establish Article III standing, a plaintiff must demonstrate: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the injury was caused by the defendant, and (3) the injury would likely be redressed by the requested judicial relief. *Id.* at 540 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). At the pleading stage, the plaintiff must "'clearly… allege facts demonstrating each element.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

"The Supreme Court has rejected the idea that a bare 'statutory violation' is a 'concrete injury.'" *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 942 (8th Cir. 2024) (quoting *Spokeo*, 578 U.S. at 341). A plaintiff must also have suffered a "concrete harm because of the defendant's violation of federal law." *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021). More specifically, even if a plaintiff does not receive all information required by law, he still must identify some "'downstream consequence[ ] from failing to receive'" it. *Hekel*, 118 F.4th at 942 (quoting *TransUnion*, 594 U.S. at 442).

Plaintiff's Complaint primarily alleges "purely informational injur[ies]" that do not satisfy Article III's concreteness requirement. *Id.* As stated previously, the plan must "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard)." 42 U.S.C. § 300gg-4(j)(3)(D), (E). Or, "[i]f plan materials disclose that such a program is available, without describing its terms, the disclosure [ ] shall not be required." 42 U.S.C. § 300gg-4(j)(3)(E). According to Plaintiff, Defendant's disclosures violate this requirement because "[t]here is no notification informing participants of a program that will entitle them to the full reward and ensure they avoid the surcharge for the entire year." (Doc. 1 at 9). This alleged statutory violation therefore "deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees." (Doc. 1 at 9). Additionally, Plaintiff claims that Defendant's disclosures make "no statement that the recommendations of an individual participant's physician will be accommodated, as required." (Doc. 1 at 9).

16

Plaintiff's conclusory claim that the given notice "deprives employees of the ability to make informed decisions about their health and wellness benefits[ ]" falls short of alleging a concrete Article III injury. (Doc. 1 at 9). "Naked assertions" devoid of "further factual enhancement" do not plausibly establish an Article III injury. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (citation modified). It is not apparent from Plaintiff's complaint what exactly an "informed decision" would result in. Presumably, Plaintiff would have decided to complete the wellness program sooner to receive a larger monetary reward. But the Complaint never identifies or even hints that this is what Plaintiff would have done. This general allegation of harm is insufficient for Article III purposes.

One of Defendant's other claims—that the notice does not provide reassurance that an accommodating physician's recommendation will be accommodated—also does not establish a concrete injury to Plaintiff. To put it colloquially, standing asks, "What's it to you?" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). Plaintiff does not claim that she personally needed to use or would have used an accommodating physician's recommendation instead of the wellness program. In fact, Plaintiff completed the wellness program several times

during her employment with Defendant without the need for a physician's recommendation. (Doc. 27 Ex. 1; Ex. 3). Plaintiff did not suffer any injury in fact from this portion of the notice.

The only concrete injury Plaintiff alleges she suffered, a monetary loss, does count as a concrete injury for Article III purposes. *See TransUnion*, 594 U.S. at 425 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III"). But Plaintiff's complaint never establishes that this monetary injury is traceable to Defendant's allegedly defective notice. "Under Article III, the plaintiff must show 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *F.B. v. Our Lady of Lourdes Parish and Sch.*, 125 F.4th 898, 903 (8th Cir. 2025) (quoting *Arc of Iowa v. Reynolds*, 94 F.4th 707, 711 (8th Cir. 2024)).

Plaintiff does not allege how Defendant's Plan disclosures caused her to suffer these monetary injuries. The cause of Plaintiff's increased expenses is not the notice given in the disclosures about the Plan, but the structure of the Plan itself. Plaintiff has not demonstrated how her behavior would have changed with a compliant notice. Put another way, Plaintiff would be in the exact same place with or without the purported defects in the notice.

Plaintiff does not have Article III standing to proceed with Count II.

*Alternatively, Defendant's Plan Disclosures Comply with ERISA.*

Count II alleges that Defendant "did not give statutorily required notice of a complaint reasonable alternative standard" because "neither the Plan document nor the summary plan description for the Plan during the application limitations period detailed a reasonable alternative standard that would allow all participants to avoid paying the tobacco surcharge for the entire plan year, in violation of the applicable regulations." (Doc. 1 at 15). As this Court concluded in considering Count I, there is no requirement that a plan allow all tobacco users to avoid the entire year's tobacco surcharge throughout the whole year. Because the tobacco surcharge portion of the Plan complies with ERISA, the disclosures describing the tobacco surcharge comply with ERISA as well.

Count II is DISMISSED with PREJUDICE.

## Count III is Dismissed with Prejudice.

Count III claims that Defendant breached its fiduciary duty to the Plan in assessing the allegedly discriminatory surcharge in violation of 29 U.S.C. 1104(a)(1). (Doc. 1 at 16). Plaintiff also alleges that Defendant breached its duty of loyalty to the Plan by "retaining the additional money received from the" tobacco surcharge for Defendant's own benefit in violation of 29 U.S.C. 1106(b)(1) (Doc. 1 at 17).

19

29 U.S.C. § 1104(a)(1)(A) states "that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and" for the exclusive purpose of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." Further, 29 U.S.C. § 1106(b)(1) prevents a fiduciary from dealing "with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1109, in turn, makes a fiduciary "personally liable to make good to such plan any losses to the plan resulting from each such breach" of fiduciary duty.

Defendant first argues that Count III should be dismissed because Defendant cannot have breached any fiduciary duty to the Plan because the Plan complies with ERISA. (Doc. 26-1 at 17). Defendant is correct. As explained at length, Defendant's reasonable alternative to avoid the tobacco surcharge and its notice of that reasonable alternative complies with ERISA.

Defendant also argues for dismissal because Defendant did not act as a fiduciary in creating and administering the Plan, but as a settlor. (Doc. 26-1 at 17). "In every case charging breach of ERISA fiduciary duty, [ ] the threshold question is… whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pergram v. Herdrich*, 530 U.S. 211, 226 (2000). A person operates as an ERISA fiduciary to the extent that person "exercises any discretionary authority or discretionary

control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" and when that person "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The adoption of an ERISA plan is not a discretionary act.  Plan sponsors "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). When plan sponsors undertake one of those actions, "they do not act as fiduciaries, but are analogous to the settlors of a trust." *Lockheed Co. v. Sprink*, 517 U.S. 882, 890 (1996) (citations omitted).

In adopting the tobacco use surcharge and the wellness program generally, Defendant acted not as a fiduciary, but as a settlor. "[T]here can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms." *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F.Supp.2d 198, 210 (D. Mass. 2002).

Count III is DISMISSED with PREJUDICE.

## CONCLUSION

Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 26) is

**GRANTED**.  Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH**

**PREJUDICE**.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE